UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLETUS WOODROW & BEVERLY BOHON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL ENERGY REGULATORY COMMISSION, *et al.*,<br><br>Defendants. | Civil Action No. 20-6 (JEB) |

## MEMORANDUM OPINION

This case presents the latest trickle in a veritable flood of litigation relating to Defendant Mountain Valley Pipeline, LLC's proposed construction of a natural-gas pipeline through Virginia and West Virginia. In October 2017, Defendant Federal Energy Regulatory Commission granted MVP a certificate that permitted the company to build the pipeline and enabled it to exercise the agency's eminent-domain authority to do so. That approval has thus far withstood various administrative challenges as well as review in multiple federal courts of appeals.

Not easily deterred, Plaintiffs — homeowners along the proposed pipeline's path — bring another suit, this one featuring constitutional challenges to FERC's enabling statute, the Natural Gas Act. They seek, among other things, a nationwide injunction ending the existing FERC pipeline-approval process and voiding all pipeline certificates, including the one issued to MVP. The NGA, however, channels review of FERC decisions relating to pipelines — including constitutional claims inhering in those controversies — to the agency, not to a district court. Plaintiffs' attempt to transform their grievance with FERC over the MVP certificate into a facial

1

constitutional challenge cannot save them from the statutorily mandated administrative-review process. The Court will therefore dismiss the case for lack of subject-matter jurisdiction.

**I.     Background**

   A.  Statutory Background

Congress enacted the NGA, 15 U.S.C. § 717, *et seq*., "with the 'principal purpose' of 'encouraging the orderly development of plentiful supplies of natural gas at reasonable prices.'" Myersville Citizens for a Rural Cmty., Inc. v. FERC, 783 F.3d 1301, 1307 (D.C. Cir. 2015) (alterations omitted) (quoting NAACP v. Fed. Power Comm'n, 425 U.S. 662, 669–70 (1976)). "The Act vests FERC with broad authority to regulate the transportation and sale of natural gas in interstate commerce." Minisink Residents for Envtl. Pres. & Safety v. FERC, 762 F.3d 97, 101 (D.C. Cir. 2014). The agency's responsibilities include the authorization of interstate natural-gas pipelines, such as the MVP project at issue here. See 15 U.S.C. § 717f(c)).

The "keystone" of FERC's pipeline-authorization process is the so-called "certificate of public convenience and necessity." Bold All. v. FERC, No. 17-1822, 2018 WL 4681004, at *1 (D.D.C. Sept. 28, 2018) (quoting 15 U.S.C. § 717f(d)). These certificates, which permit "the construction or extension of natural gas transportation facilities," are a prerequisite for the construction of any interstate natural-gas pipeline. Myersville, 783 F.3d at 1307 (citing 15 U.S.C. § 717f(c)). According to the NGA, FERC "shall" issue a certificate "to any qualified applicant" upon a finding that "the applicant is able and willing properly to do the acts and to perform the service proposed," and that the proposed service or construction "is or will be required by the present or future public convenience and necessity." 15 U.S.C. § 717f(e). FERC's issuance of a certificate, moreover, conveys the power of eminent domain to its holder.

Id. § 717f(h). Armed with that authority, the certificate holder can initiate condemnation proceedings as necessary. Id.

FERC's issuance of a certificate represents the culmination of an extensive application process and sets into motion elaborate review mechanisms. First, in order to receive the certificate, the applicant must submit reams of technical, economic, and environmental information concerning the project. See 18 C.F.R. § 157.6(b) (application content requirements including "detailed cost of service data"). The applicant must also make a "good faith effort to notify all affected" landowners, towns, communities, and government agencies, and any interested party, including environmental and tribal groups may intervene in the proceeding to file comments of their own. Id. §§ 157.6(d), 157.10. After a lengthy review of these materials — along with the consideration of a number of factors, such as the project's environmental impact and whether its "public benefits" outweigh the "potential adverse consequences" —— the agency may grant the certificate. Certification of New Interstate Natural Gas Pipeline Facilities, 88 FERC ¶ 61,227 (Sept. 15, 1999), clarified, 90 FERC ¶ 61,128 (Feb. 9, 2000), further clarified, 92 FERC ¶ 61,094 (July 28, 2000) (FERC's policy statement outlining certificate-issuance criteria).

Next, "aggrieved" persons, ranging from the applicants themselves to interested homeowners, advocacy groups, and state and local governments, may challenge FERC's decision or ask for modifications of its order. See 15 U.S.C. § 717r(a). To do so, they must first file for rehearing before the agency. Id. If FERC declines to rehear the matter or issues a final order regarding it, the parties may then file a petition for review in the appropriate court of appeals. Id. Upon the filing of such a petition, the court of appeals retains "exclusive" jurisdiction to affirm, modify, or set aside such an order "in whole or in part." Id. § 717r(b)

(emphasis added). The petitioners may not raise new objections to the agency's order in the court of appeals unless "there is reasonable ground for [the] failure" to offer them previously. Id.

### B. MVP Project and Related Litigation

This dispute traces its roots to October 2015, when MVP set the above-described process in motion by filing an application with FERC to maintain, construct, and operate a pipeline running from Wetzel County, West Virginia, to Pittsylvania County, Virginia. See Mountain Valley Pipeline, LLC Equitrans, L.P., 161 FERC ¶ 61043 p. 1 (Oct. 13, 2017). After two years of review, including reflection on hundreds of comments from interested parties, FERC issued MVP the coveted certificate of authorization. Id.

Over twenty affected landowners, environmental organizations, and tribal groups sought rehearing of FERC's issuance of the certificate, which the agency rejected in a lengthy opinion affirming its prior conclusions. See Mountain Valley Pipeline, LLC Equitrans, L.P., 163 FERC ¶ 61197 (June 15, 2018). Many of those same parties then petitioned for review in the D.C. Circuit, lodging sixteen different challenges, both statutory and constitutional, relating to the certificate's issuance. See Appalachian Voices v. FERC, No. 17-1271, 2019 WL 847199, at *1 (D.C. Cir. Feb. 19, 2019). The Court of Appeals affirmed the agency's decision and, in doing so, rejected the petitioners' constitutional claims grounded in the Fifth Amendment's Due Process and Takings Clauses. Id. at *2–3.

While the MVP project flowed through the agency and into the Circuit, a separate group of landowners along the pipeline's path brought suit in the Western District of Virginia arguing — as Plaintiffs do here — that the NGA constitutes an impermissible delegation of legislative authority to the agency. Berkley v. Mountain Valley Pipeline, LLC, No. 17-357, 2017 WL 6327829, at *2 (W.D. Va. Dec. 11, 2017). The district court dismissed the case, concluding that

the NGA stripped it of jurisdiction over those claims, id. at *1, and the Fourth Circuit affirmed. See 896 F.3d 624, 627 (4th Cir. 2018), cert. den. sub nom. Berkley v. FERC, 139 S. Ct. 941 (2019).

Finally, and concurrently with the Virginia action, a group of similarly aggrieved landowners — including two of the very same Plaintiffs in this action — filed suit in this district against MVP and FERC, arguing, *inter alia*, that the certificate program created by the NGA delegates legislative power to the agency in violation of the Constitution. See Bold All., 2018 WL 4681004, at *1; see also id. ECF No. 1 (Bold Alliance Complaint), ¶¶ 81–86. The court dismissed the suit for lack of jurisdiction, concluding that the NGA "provides a specific procedural path for review: seeking a rehearing before FERC, followed by filing a petition for review with the appropriate court of appeals," which the plaintiffs could not bypass by framing their claims as constitutional challenges. Bold All., 2018 WL 4681004, at *1.

C. Factual and Procedural History

Ensuring that this new year would not proceed far without its own MVP-related challenge, Plaintiffs — six landowners whose property interests will be affected by the project — filed their Complaint on January 2, 2020. MVP seeks access to almost three acres of Cletus and Beverly Bohon's property in Ellison, Virginia, for the pipeline. See ECF No. 1 (Complaint), ¶ 1. The Bohons have refused to sell, and MVP now seeks to exercise eminent domain over the property. Id. Similarly, the company proposes to exercise its power to construct an easement over Robert and Aimee Hamm's family home on Bent Mountain in Virginia and to take 5.88 acres of land from Wendell and Mary Flora's farmhouse in Franklin County, Virginia. Id., ¶¶ 2–3.

All three counts of the Complaint allege that the NGA is facially unconstitutional, but for purportedly different reasons. Count I alleges that the Act is infirm because Congress has delegated to FERC "legislative power" in granting the agency "unfettered discretion to . . . grant certificates of public convenience and necessity." Id., ¶¶ 40–47. Count II alleges that the NGA improperly allows FERC to transfer its eminent-domain authority to private entities, which violates "the separation of powers and non-delegation doctrine." Id., ¶¶ 48–53. Count III, pled in the alternative to Count II, asserts that the unconstitutionality lies in the Act's delegation to FERC of the legislative power of exercising eminent-domain authority. Id., ¶¶ 54–64.

Plaintiffs' requested relief is breathtaking in scope. They seek a declaration that: (1) the NGA's delegation of eminent-domain authority to FERC or to any private entity "including MVP" is unconstitutional; (2) FERC has no power to issue certificates to applicants seeking to use the power of eminent domain; and (3) all such certificates previously issued are void. Id. at 14–15. They also request an injunction preventing FERC from issuing further certificates and prohibiting the agency or any private entity from exercising eminent-domain authority. Id. at 15. Defendants FERC and MVP now separately move to dismiss for lack of jurisdiction or, in the alternative, for failure to state a claim, and Plaintiffs oppose those Motions.

## II.    Standard of Review

Defendants' Motions invoke the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the Court indeed has subject-matter jurisdiction to hear his claims. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). "Absent subject matter jurisdiction over a case, the court must dismiss [the claim]." Bell v. U.S. Dep't of Health & Human Servs., 67 F.

Supp. 3d 320, 322 (D.D.C. 2014). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion [also] imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

In policing its jurisdictional borders, a court must scrutinize the complaint, treating its factual allegations as true and granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts. See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The court need not rely "on the complaint standing alone," however, but may also look to undisputed facts in the record or resolve disputed ones. See Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

Rule 12(b)(6), conversely, provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56.

**III.  Analysis**

Defendants initially argue that the Court lacks subject-matter jurisdiction over Plaintiffs' claims. They also assert that the counts are barred by issue preclusion and *res judicata* and that they fail to state plausible claims for relief. As courts must always ensure themselves of their jurisdiction before proceeding to the merits, the Court will begin and end there.

Defendants contend that the text of the NGA explicitly bars federal district courts from reviewing claims of the nature that Plaintiffs bring here — that is, challenges relating to the natural-gas pipeline-certification process. They argue that this jurisdictional mandate is also implicit in the structure of the NGA's review scheme. Plaintiffs acknowledge that the Act demands administrative review of FERC's individual decisions but counter that it permits immediate Article III adjudication of related constitutional challenges.

At the outset, the Court notes that the heavy weight of precedential authority lies with Defendants on these questions. As discussed in more detail below, a slew of district courts and two courts of appeals have held that federal district courts do not have subject-matter jurisdiction over constitutional challenges to FERC's actions or enabling statute brought by "aggrieved" parties seeking the injunction of a certificate (or, in this case, every FERC certificate). See, e.g., Berkley, 2017 WL 6327829, at *4 ("[P]laintiffs have not cited a single case where a district court exercised jurisdiction over claims — whether characterized as constitutional challenges or otherwise — that would require a modification of a FERC order if the claims were successful."); N.J. Conservation Found. v. FERC, 353 F. Supp. 3d 289, 299 (D.N.J. 2018) ("[T]he law is indeed 'well-settled' that the NGA's exclusivity provision has broad reach over challenges brought against FERC, including constitutional claims."). Not one has held to the contrary.

Most notably, as mentioned above, the Fourth Circuit has affirmed the dismissal for lack of jurisdiction of a suit almost identical to this one — a nondelegation claim brought against FERC and MVP by homeowners along this very pipeline's proposed path. Berkley, 896 F.3d at 627; Berkley, 2017 WL 6327829, at *2. A court in this district has done the same, dismissing constitutional claims against FERC and MVP brought by two of the same Plaintiffs in this matter. See Bold All., 2018 WL 4681004, at *4. Sometimes there may be cause to stand out

8

from the crowd, but for the reasons that follow, the Court will side with the collective wisdom here. Its discussion begins with an analysis of the express terms of the Act and then considers its implicit meaning.

    A.  <u>Express Channeling of Review</u>

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." <u>Jarkesy v. SEC</u>, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting <u>Bowles v. Russell</u>, 551 U.S. 205, 212 (2007)). "If a special statutory review scheme exists, . . . 'it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.'" <u>Id.</u> (quoting <u>City of Rochester v. Bond</u>, 603 F.2d 927, 931 (D.C. Cir. 1979)).

The NGA has such a special statutory-review scheme, and it expressly applies to Plaintiff's claims. As explained above, any person "aggrieved by an order issued by the Commission" may apply for a rehearing. <u>See</u> 15 U.S.C. § 717r. Only once that administrative process has concluded may the "aggrieved" person petition for review "in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or . . . in the United States Court of Appeals for the District of Columbia." <u>Id.</u> § 717r(b). Upon the filing of such a petition, the appellate court shall have "exclusive" jurisdiction to "affirm, modify, or set aside [the] order." <u>Id.</u> Furthermore, the Act's administrative-exhaustion requirement forecloses the assertion of new claims not previously considered by the agency. <u>Id.</u>

The NGA's jurisdictional provision is broad. The Supreme Court has interpreted an identical provision in the Federal Power Act to "preclude[ ] *de novo* litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review.'" <u>City of Tacoma v. Taxpayers of Tacoma</u>, 357 U.S. 320, 336 (1958) (emphasis added). As the Tenth

9

Circuit has commented, one "would be hard pressed to formulate a doctrine with a more expansive scope" than the "inhering in the controversy" standard. Williams Nat. Gas Co. v. City of Oklahoma City, 890 F.2d 255, 262 (10th Cir. 1989) (applying standard to NGA). Courts have therefore concluded that the NGA provides the "exclusive remedy for matters relating to the construction of interstate natural gas pipelines," "nullifying any procedural alternatives an aggrieved party may otherwise have." Adorers of the Blood of Christ v. FERC, 897 F.3d 187, 195 (3d Cir. 2018), cert. denied, 139 S. Ct. 1169 (2019) (rejecting Religious Freedom Restoration Act claim relating to FERC-approved pipeline).

As homeowners along the proposed pipeline, Plaintiffs qualify as "aggrieved parties" under the Act and therefore should have availed themselves of the NGA's review process. Their standing arguments and the fact that they name MVP as a Defendant make clear that their bone of contention is with the agency's decision to permit MVP to exercise eminent domain over their properties. See Bold All., 2018 WL 4681004, at * 5 (reaching same conclusion concerning nondelegation challenge brought by homeowners affected by MVP project). The remedy they seek entails this Court's "set[ting] aside" FERC's certificate granted to MVP (along with those granted to all other companies), an authority the NGA grants to only the court of appeals reviewing the FERC order. See 515 U.S.C. § 717r. The Act, moreover, explicitly "allows for district court jurisdiction over certain actions, such as condemnation proceedings." Berkley, 896 F.3d at 630 (citing 15 U.S.C. § 717f(h)). Congress therefore knew how to create exceptions to the statutory-review scheme when it wanted to, and "nothing in the Natural Gas Act indicates" that it intended to create other exceptions "except those . . . specifically set out." Id. In sum, Plaintiffs' constitutional challenges "inhere" in their "controversy" with FERC and MVP over

the pipeline, and the NGA explicitly places jurisdiction over this controversy with the agency and ultimately the court of appeals.

Plaintiffs rejoin that they may evade the NGA's jurisdictional provision because they are not challenging a particular FERC order but rather Congress's unconstitutional delegation of legislative authority to FERC generally (and, in turn, to MVP) via the NGA. Arguments of this shade have been rejected by every court to have considered them. See, e.g., Bold All., 2018 WL 4681004 at *4 ("Courts have affirmed the exclusive nature of the FERC procedures time and again."); N.J. Conservation Found, 353 F. Supp. 3d at 299 ("[T]he NGA's exclusivity provision has broad reach over challenges brought against FERC, including constitutional claims."). These courts have reasoned that because "exclusive means exclusive," federal district judges may not exercise jurisdiction over claims formed not as a direct challenge to an agency order but instead seeking to enjoin an order by other means. See Am. Energy Corp. v. Rockies Express Pipeline LLC, 622 F.3d 602, 605 (6th Cir. 2010) (affirming dismissal for lack of jurisdiction under NGA where landowners sued to enjoin building of pipeline and recover tort damages for conversion).

The Act simply does not "bifurcat[e] . . . judicial review along substantive lines," and for good reason. Williams Nat. Gas Co., 890 F.2d at 262. The exhaustion requirement and the granting of "exclusive" jurisdiction over pipeline approvals "would be entirely undermined if unhappy parties could come to district courts, seeking relief under the [Constitution]." Lovelace v. United States, No. 15-30131, 2016 WL 10826764, at *1 (D. Mass. Feb. 18, 2016). To permit parties to reserve constitutional arguments for a later round of litigation "would negate most of the benefits attending the 'exclusive' scheme of review" — namely, finality and avoidance of piecemeal litigation. Williams Nat. Gas Co., 890 F.2d at 262; see also City of Rochester v. Bond, 603 F.2d 927, 936 (D.C. Cir. 1979) (special-review schemes "disfavor bifurcating

jurisdiction over various substantive grounds between district court and the court of appeals" because of "likelihood of duplication and inconsistency").

Bifurcation and duplicative litigation are on display here in spades: Plaintiffs bring a suit nearly identical to one already dismissed by a sister court and call on this Court to enjoin a FERC certificate already approved by the Court of Appeals. For these reasons, Defendants also offer strong arguments that this litigation is precluded by either *res judicata* or issue preclusion. Because it lacks subject-matter jurisdiction over Plaintiffs' claims, the Court need not reach those issues. That they arise, however, speaks to the duplicative nature of collateral constitutional attacks on FERC's pipeline process brought outside of the administrative-review scheme.

### B. Implicit Divesting of Jurisdiction

Even if the statute does not expressly divest the Court of jurisdiction over this case, it does so implicitly. See Adorers, 897 F.3d at 195 (finding that NGA both expressly and implicitly precluded exercise of jurisdiction over RFRA challenge). In Thunder Basin Coal Company v. Reich, 510 U.S. 207 (1994), the Supreme Court devised a two-step framework for ascertaining whether a review scheme such as that at issue here "allocate[s] initial review" of a specific claim "to an administrative body." Id. at 212. A court must consider (i) whether "such intent is 'fairly discernible in the statutory scheme,' and (ii) [whether] the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'" Jarkesy, 803 F.3d at 15 (second alteration in original) (quoting Thunder Basin, 510 U.S. at 207, 212).

For the reasons described above — namely, the Act's "exclusive" jurisdictional provision and exhaustion requirement — Congressional intent to channel Plaintiffs' claims to the agency-review process is "fairly discernible" in the NGA. See Berkley, 896 F.3d at 629–30 (text and

structure of NGA evince congressional intent to remove district-court jurisdiction over nondelegation-doctrine claim related to pipeline); see also Adorers, 897 F.3d at 195 ("Congress' intent to vest jurisdiction [over RFRA claim relating to pipeline] in circuit courts is 'fairly discernible' in the [NGA]."). The Court will therefore proceed to the second step: whether Plaintiffs' claims are of the type Congress intended to be reviewed within the statutory structure.

To ascertain whether Congress has implicitly channeled review in such a way, courts consider "[i] if 'a finding of preclusion could foreclose all meaningful judicial review'; [ii] if the suit is 'wholly collateral to a statute's review provisions'; and [iii] if the claims are 'outside the agency's expertise.'" Free Enter. Fund v. Pub. Co. Accounting Oversight Bd., 561 U.S. 477, 489 (2010) (quoting Thunder Basin, 510 U.S. at 212–13). These considerations are not "distinct inputs in a strict mathematical formula" but rather "general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design." Jarkesy, 803 F.3d at 17. The Court will take each one in turn.

1. *Meaningful Judicial Review*

First, and crucially, a finding of preclusion here does not foreclose "all meaningful judicial review" of claims of the nature Plaintiffs assert. On the contrary, the Act expressly provides for judicial review. See 15 U.S.C. § 717r(b). As many others have done, Plaintiffs could have participated in the MVP-certification process, requested rehearing by the agency, and ultimately appealed to the Circuit, raising constitutional challenges. See Appalachian Voices, 2019 WL 847199, at *2–3 (affirming issuance of certificate to MVP and addressing Fifth Amendment challenges). Plaintiffs' submissions notwithstanding, in deciding petitions for review from agency decisions, the courts of appeals have addressed facial constitutional challenges to a range of statutes, including the NGA. See Metzenbaum v. FERC, 675 F.2d 1282,

13

1288–89 (D.C. Cir. 1982) (rejecting claim that NGA is facially unconstitutional on petition for direct review from agency); see also Lucia v. SEC, 138 S. Ct. 2044, 2050–51 (2018) (addressing Appointments Clause challenge reviewed by court of appeals after consideration by agency); Blinder, Robinson & Co. v. SEC, 837 F.2d 1099, 1103–04 (D.C. Cir. 1988) (addressing removal-powers challenge on appeal from agency proceeding); Sorrell v. SEC, 679 F.2d 1323, 1325–26 (9th Cir. 1982) (addressing, on direct review of agency order, challenge that Congress unconstitutionally delegated legislative power to private entity); but see NO Gas Pipeline v. FERC, 756 F.3d 764, 767–69 (D.C. Cir. 2014) (dismissing for lack of jurisdiction claim that Federal Budget Act unduly influences FERC decisionmaking because, unlike the claims here, challenge concerned Budget Act and petitioner did not qualify as "aggrieved party" under NGA).

Plaintiffs counter that because FERC itself is not authorized to render a decision on their constitutional claims in the first instance, they are "deprived of meaningful review" even if a court of appeals can ultimately consider them. They are mistaken. The Supreme Court and D.C. Circuit have made clear that a constitutional challenge does not retain such "talismanic significance." Jarkesy, 803 F.3d at 18. As the Circuit answered this question in Jarkesy: "Because [the plaintiff's] constitutional claims, including his non-delegation challenge . . . , can eventually reach 'an Article III court fully competent to adjudicate' them, it is of no dispositive significance whether the [agency] has the authority to rule on them in the first instance during the agency proceedings." Id. at 19 (emphasis added); see also Elgin v. U.S. Dep't of Treasury, 567 U.S. 1, 17 (2012) (constitutional claims "could be 'meaningfully addressed in the Court of Appeals,'" even if agency could not adjudicate them in first instance) (quoting Thunder Basin, 510 U.S. at 215); Berkley, 896 F.3d at 631 ("FERC's inability to resolve Plaintiffs' constitutional

14

claims does not mean that the statutory scheme deprives Plaintiffs of meaningful judicial review.").

### 2. *Wholly Collateral*

Next, Plaintiffs' claims are not "wholly collateral" to the Natural Gas Act's review scheme because, as explained above, they "inhere in the controversy" over the MVP Project. As the Fourth Circuit reasoned in <u>Berkley</u>, the homeowners' constitutional claims supply "the means by which they seek to vacate the granting of the Certificate to Mountain Valley Pipeline." 896 F.3d at 632. Should Plaintiffs be "successful on [their] constitutional claims, the FERC order would necessarily be invalidated." <u>N.J. Conservation Found.</u>, 353 F. Supp. 3d at 307; <u>see also</u> <u>Elgin</u>, 567 U.S. at 21–22 (where plaintiff's constitutional claims were "vehicle" by which they sought to reverse agency decision, they were not "wholly collateral" to statutory-review scheme). In this way, then, they cannot be considered "wholly collateral" to the statutory-review process.

Plaintiff attempts to rebut this conclusion by relying on two cases. Neither is persuasive. In <u>Free Enterprise</u>, the plaintiffs brought an Appointments Clause challenge to the Public Company Accounting Oversight Board established by the Sarbanes-Oxley Act directly in federal district court. <u>See</u> 561 U.S. at 488–90. The Supreme Court held that though the Act created an administrative-review structure, the suit was "wholly collateral" to that scheme, and the district court thus had jurisdiction to consider it. This was so because the plaintiffs' constitutional claim was entirely unrelated to any particular action taken by the Board. <u>Id.</u> Indeed, the plaintiffs there would likely have needed to "bet the farm" and incur a sanction from the Board in order to gain access to that administrative-review scheme. <u>Id.</u> at 490 (quoting <u>MedImmune, Inc. v.</u>

15

Genentech, Inc., 549 U.S. 118, 129 (2007)).  Not so here where Plaintiffs could have availed themselves of the agency and ultimately the D.C. Circuit.

Similarly, our Court of Appeals has held that the NGA's judicial-review provision did not apply to a "structural-bias" claim brought by environmentalists asserting that the Budget Act impermissibly encourages FERC to approve natural-gas pipelines.  Del. Riverkeeper Network v. FERC, 895 F.3d 102, 107 (D.C. Cir. 2018).  While the Circuit did not rely on the Thunder Basin analysis, this systemic challenge to the Budget Act's influence on FERC was unrelated to a FERC Order and was in fact collateral to the NGA itself.  Id.; see also NO Gas Pipeline, 756 F.3d at 769 ("Insofar as [the plaintiff] sets forth a statutory quarrel, its complaint is against the Budget Act and the financial structure that it creates.").  The Circuit's "narrow[ ] jurisdictional holding" in Delaware Riverkeeper therefore has no application here.  Id.

In sum, the NGA does not channel every person with standing to challenge the statute to FERC, only those "aggrieved by" a specific pipeline-certification issuance who have access to the administrative-review scheme in the first instance.

3. *Outside the Agency's Expertise*

Finally, as to the third factor, "agency expertise may be brought to bear" on Plaintiffs' claims, even though they are constitutional in nature.  Am. Fed'n of Gov't Employees, AFL-CIO v. Trump, 929 F.3d 748, 760 (D.C. Cir. 2019) (quoting Jarkesy, 803 F.3d at 29).  Plaintiffs argue the converse, noting that FERC retains neither the authority to strike down the NGA on constitutional grounds nor the ability to meaningfully analyze constitutional claims.  Yet "an agency's relative level of insight into the merits of a constitutional question is not determinative" in answering this question.  Id. at 761 (quoting Jarkesy, 803 F.3d at 28–29).  Even though FERC cannot rule on the constitutionality of the NGA, its expertise can "be brought to bear" on "many

16

threshold questions that may accompany a constitutional claim." Elgin, 567 U.S. at 22–23 (quoting Thunder Basin, 510 U.S. at 214–15).

As the Circuit has confirmed, first, the agency "could offer an interpretation of [a statute] in the course of the proceeding that might answer or shed light on [a] non-delegation challenge." Jarkesy, 803 F.3d at 29. "After all, there are precious few cases involving interpretation of statutes authorizing agency action in which [Article III] review is not aided by the agency's statutory construction." Am. Fed'n of Gov't Employees, 929 F.3d at 761 (quoting Jarkesy, 803 F.3d at 29). Put differently, before it strikes down a statute on the ground that it unconstitutionally delegates legislative power, the court of appeals would likely benefit from the agency's elaboration on how it perceives and exercises that power.

Alternatively, agency review could "'obviate the need to address' broad constitutional and statutory claims" because the agency might resolve the case on "other grounds." Id. (quoting Jarkesy, 803 F.3d at 29). For example, if Plaintiffs had raised their constituitonal claims to the agency in the context of challenging the MVP certificate, FERC might have mooted them by modifying the pipeline order. Allowing a litigant to instead "make an end run" around the "statutory review process" with constitutional claims would therefore "run counter to important principles of judicial restraint." Jarkesy, 803 F.3d at 24 (quoting Storm, Ruger & Co. v. Chao, 300 F.3d 867, 876 (D.C. Cir. 2002)). "[C]ourts generally avoid ruling on constitutional grounds when possible," but "an exception to an otherwise exclusive scheme for constitutional challenges in general, or facial attacks on a statute in particular . . . [,] would encourage respondents in administrative enforcement proceedings to frame their challenges to the Commission's actions in those terms." Id. at 25. District courts would be forced to proceed full steam ahead and issue nationwide injunctions blocking entire federal regulatory programs

because there would be no other way to resolve the claims.  See Trump v. Hawaii, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring) (cautioning district courts against issuing nationwide or "universal" injunctions, particularly "without considering their authority to grant such sweeping relief").

Because FERC's expertise can be "brought to bear" on Plaintiffs' constitutional claims, the Court thus sees "no reason to conclude that Congress intended to exempt" the claims from the statutory scheme.  Jarkesy, 803 F.3d at 23 (quoting Elgin, 567 U.S. at 23).  The Court's finding that the NGA strips it of jurisdiction over Plaintiffs' claims is thus confirmed.

*     *     *

When Congress creates an intricate statutory-review process that incorporates agency consideration and ultimately an avenue to petition an Article III court, we assume it wants that scheme to control.  Id. at 15 (quoting City of Rochester, 603 F.2d at 931).  This case is no exception.  The NGA's review provisions apply in full force to Plaintiffs' claims, a mandate both explicit in its text and implicit in the review structure it creates.  Indeed, this litigation reveals some of the foresight behind Congress's channeling of review to the agency in this way. Plaintiffs have attempted to bifurcate review between Article I and Article III tribunals and circumnavigate the statutory scheme to achieve remedies that would apply nationwide.  The Court will decline Plaintiffs' invitation to upend federal-energy regulation in such dramatic fashion and dismiss their claims because it lacks jurisdiction to consider them.

## IV.    Conclusion

For the foregoing reasons, the Court grants Defendants' Motions to Dismiss.  A separate Order so stating will issue this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  May 6, 2020